UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

PAUL UGACTZ,

                                   Plaintiff,

                                                            **MEMORANDUM & ORDER**
                v.                                          10-CV-1247 (MKB)

UNITED PARCEL SERVICE, INC.,

                                   Defendant.

---------------------------------------------------------------x

MARGO K. BRODIE, United States District Judge:

        Plaintiff Paul Ugactz brings the above-captioned action against Defendant United Postal

Service ("UPS"), asserting claims of disability discrimination, failure to accommodate, age

discrimination, hostile work environment and retaliation under the American with Disabilities

Act ("ADA"), the Age Discrimination in Employment Act ("ADEA"), the New York State

Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL").

Defendant moved for summary judgment on all claims.  Plaintiff cross moved for partial

summary judgment and to strike Defendant's corrected statement pursuant to Local Civil Rule

56.1 ("corrected 56.1 statement").  The Court heard oral argument on December 17, 2012.[1]  For

the reasons set forth below, the Court grants in part and denies in part Defendant's motion for

summary judgment.  The Court grants Defendant's motion for summary judgment as to

Plaintiff's age discrimination claims under the ADEA, NYSHRL and NYCHRL, hostile work

environment claims under the ADA, ADEA, NYSHRL and NYCHRL, and retaliation claim

---

[1] At oral argument, the Court denied Plaintiff's motion for partial summary judgment and motion to strike Defendant's corrected 56.1 statement.  The Court reserved judgment on Defendant's summary judgment motion.

under the ADEA.  The Court denies Defendant's summary judgment motion as to Plaintiff's

failure to accommodate[2] and retaliation claims under the ADA, NYSHRL and NYCHRL.

**I.   Background**

   **a.  Employment and Treatment History**

Plaintiff was hired by Defendant on February 13, 1986.  (Def. 56.1 ¶ 1.)[3]  In 1986,

Plaintiff was promoted to the position of Package On-Car Supervisor and held various positions

for the next 15 years.  (*Id.* at ¶¶ 2–3.)  On June 18, 1996, Plaintiff was promoted to the position

of Hub Supervisor for the Maspeth facility, Island City, New York.  (*Id.* at ¶ 5.)  As a Hub

Supervisor, Plaintiff was required at times to work overnight shifts.  (*Id.* at ¶ 6.)  The parties

dispute whether or not Plaintiff had repeated disciplinary problems during his employment.  (*Id.*

at ¶¶ 9–16; Pl. 56.1 ¶¶ 9–16.)

Shortly after Plaintiff became a Hub Supervisor, he asked for a lateral move out of the

Maspeth facility.  (Def. 56.1 ¶ 26.)  Until 2001, Plaintiff continued to make various requests for

transfers unrelated to disability.  (*Id.* at ¶ 27.)  Plaintiff alleges that in May 2001, he suffered a

"mini-stroke, was hospitalized and on disability leave."  (Pl. 56.1 ¶ 27.)  On July 29, 2001,

Plaintiff wrote to Craig Owens, Division Manager of Human Resources.  (Def. 56.1 ¶ 28.)  In the

letter, Plaintiff stated that he had applied for transfers and promotions and had been denied.

(Lario Aff. Ex. 4.)

In March 2002, Plaintiff began seeing Dr. Steven Bluestine, a psychiatrist.  (Def. 56.1

¶ 35.)  Dr. Bluestine diagnosed Plaintiff with major depression and panic disorder with

agoraphobia.  (Pl. 56.1 ¶ 35.)  On April 5, 2002, Plaintiff wrote to Owens asking for a transfer to

---

[2] As discussed in the failure to accommodate section below, the Court considers
Plaintiff's disability discrimination claim and failure to accommodate claim to be one claim.  *See
infra* Part II(c).

[3] All citations to Defendant's 56.1 statement are to Defendant's corrected 56.1 statement.

the Metro New York District.  (Lario Aff. Ex. 5.)  He stated, "as you are well aware I have been

on disability due to professional and personal issues. . . .  This request for transfer is supported

by medical opinions from my Doctors & therapists."  (*Id.*)

In 2004, Plaintiff submitted two formal requests for reasonable accommodations.  On

April 27, 2004, Plaintiff requested a reasonable accommodation through Defendant's ADA

Accommodation Procedure ("Accommodation Process"), with a medical certification from Dr.

Bluestine.  (Def. 56.1 ¶¶ 37–38.)  Plaintiff received a letter, dated June 3, 2004, denying his

request.  (Pl. 56.1 ¶ 39.)  According to Defendant, Plaintiff's request was denied because

Defendant determined that Plaintiff was ineligible for a reasonable accommodation.  (Def. 56.1

¶ 39.)  Plaintiff submitted another request for a reasonable accommodation on June 8, 2004, with

another certification from Dr. Bluestine.  (*Id.* at ¶¶ 40–41.)  In a letter dated September 15, 2004,

Defendant denied the June 8, 2004 request.  (Pl. 56.1 ¶ 42.)  Again, Defendant asserts that this

request was denied because Defendant found Plaintiff ineligible for a reasonable

accommodation.  (Def. 56.1 ¶ 42.)  In both requests, Plaintiff asked to be kept off night shifts

because they interfered with his medication prescribed by Dr. Bluestine.  (Pl. 56.1 ¶ 46.)  On

September 14, 2004, Plaintiff suffered a heart attack and went on medical leave.[4]  (*Id.* at ¶ 233.)

According to Plaintiff, on September 15, 2004, Plaintiff's wife spoke to Bruce Thomas,

Employees Relation Manager, regarding Plaintiff's heart attack and in support of Plaintiff's

ongoing requests for reasonable accommodation.  (*Id.* at ¶ 234.)  Thomas told Plaintiff's wife

that "UPS is no longer right for" Plaintiff and he should resign.  (*Id.*)  Plaintiff returned from

leave in October 2004.  (*Id.* at ¶ 238.)

---

[4] Defendant asserts that on September 15, 2004 Plaintiff left work "without notifying
management."  (Def. 56.1 ¶ 14.)

On January 3, 2005, Plaintiff began a medical leave of absence.  (Def. 56.1 ¶¶ 52–53.)

Plaintiff returned to work on February 22, 2005.  (*Id.*)  In February 2005, Dr. Bluestine

diagnosed Plaintiff with Attention Deficit Hyperactivity Disorder ("ADHD").  (Pl. 56.1 ¶ 36.)

On March 7, 2005, a meeting took place between Plaintiff and Joe Schmidt, Plaintiff's Manager,

and Mike Scrobe, Division Manager.  Defendant claims that the purpose of the meeting was to

discuss Plaintiff's performance issues.  (Def. 56.1 ¶ 17.)  A follow-up meeting was scheduled for

the next day to place Plaintiff on a performance improvement plan ("PIP").  (*Id.* at ¶ 18.)

Plaintiff asserts that at the March 7 meeting he was "subjected . . . to unlawful discrimination,

harassment and retaliation, falsely accused . . . of lying, and told . . . he [would] be placed on a

[PIP]."  (Pl. 56.1 ¶ 17.)  The following day, March 8, 2005, Plaintiff commenced a leave of

absence.  (Def. 56.1 ¶ 19.)

On May 12, 2005, Plaintiff returned from his leave of absence and met with Schmidt,

Scrobe and Thomas.  (*Id.* at ¶¶ 20–21.)  The parties dispute what happened at the May 12, 2005

meeting.  Defendant claims that Plaintiff's performance issues were discussed at the meeting,

and Plaintiff contends that he was harassed.  (*Id.* at ¶¶ 22–25; Pl. 56.1 ¶¶ 22–25.)  Plaintiff was

told at this meeting that he would not be recommended for a bonus that year.[5]  (Def. 56.1 ¶ 23.)

Plaintiff informed everyone that he had ADHD.  (*Id.* at ¶ 24.)  After the meeting, Plaintiff met

with Thomas and they "discussed his medical condition and disabilities including ADHD[.]"

(Pl. 56.1 ¶ 24.)  Plaintiff also "requested a reasonable accommodation . . . [and] complained

about, among other items, [Defendant's] discriminatory treatment of him because of his

disabilities and his [requests for] a reasonable accommodation[.]"  (*Id.*)  On May 13, 2005,

---

[5] The parties also dispute whether Plaintiff agreed with the criticisms of his work.  (Def. 56.1 ¶ 25; Pl. 56.1 ¶ 25.)

Plaintiff commenced another medical leave of absence.  (Def. 56.1 ¶ 56.)  Plaintiff was continuously on leave of absence until January 3, 2006.  (*Id.* at ¶ 57.)

Defendant asserts that Plaintiff was administratively terminated on January 3, 2006 and never reinstated as an employee.[6]  (*Id.* at ¶¶ 5, 60, 75–124.)  Despite his termination, Defendant alleges that post-termination it offered to see if there were any open positions that could accommodate Plaintiff.  (*Id.*)  Defendant asserts that it was unable to find any suitable positions for Plaintiff, and thus he was never reinstated.  (*Id.*)  Plaintiff disputes that January 3, 2006 was his final termination and asserts that his actual termination occurred in October 2006.  (Pl. 56.1 ¶ 5.)  Plaintiff argues that in January 2006 he was mistakenly administratively terminated, but this termination was immediately revoked and Plaintiff was restored to "employee/on leave-of-absence status."[7]  (*Id.*)

Both parties agree that, in 2006, Plaintiff submitted a request for a reasonable accommodation.  (Def. 56.1 ¶ 78; Pl. 56.1 ¶ 78.)  On May 3, 2006, Defendant sent a letter to Plaintiff stating that "you may be eligible for a reasonable accommodation pursuant to the

---

[6] According to Defendant, under its Flexible Benefit Plan, if an employee is absent from work for 12 months, he or she is administratively terminated.  (Def. 56.1 ¶ 51.)  The clock begins to run when the employee takes leave, and the clock will only stop if the employee returns to work for a period of at least 30 days.  (*Id.*)  The relevant provision in the plan states: "If you are absent from work for 12 months, you will be administratively terminated from employment, regardless of your status on STD [Short Term Disability] or LTD [Long Term Disability].  For example, if your disability begins July 15, 2003, you will be administratively terminated July 14, 2004.  If your disability should end after your termination and you are able to return to work, you will be considered for employment based on your experience and skills, as would any other applicant."  (Lario Aff. Ex. 20 at 111.)  The Court has found no provision in the plan stating that an employee must return to work for 30 days for the clock to stop on the 12-month calculation, and Defendant has not pointed the Court to such a provision.

[7] In support of his claims regarding his termination date, Plaintiff has produced an internal document from Defendant that appears to be a computer print-out that states "[e]mployee was cleared in error for LTD terminated date of 01/03/2006. . . . Please reactivate employee back on LOA [Leave of Absence]-Disability LTD claim effective date of 07/20/2005[,] expected date of return as of 03/08/2006."  (Goldberg Aff. Ex. 16.)

Americans with Disabilities Act." (Def. 56.1 ¶ 82; Pl. 56.1 ¶ 82.) On May 12, 2006, Plaintiff

met with Defendant; this meeting was referred to as a "checklist meeting." (Def. 56.1 ¶ 83; Pl.

56.1 ¶ 83.) The parties dispute who was at this meeting, but both parties agree that Plaintiff and

Vanessa Valot, District Workforce Planning Manager, were present. (Def. 56.1 ¶ 84; Pl. 56.1

¶ 84.) At the meeting, "Plaintiff was provided with an accommodation checklist form and asked

to complete it." (Def. 56.1 ¶ 85.) Plaintiff stated he was having difficulties explaining his

capabilities and asked to take the checklist home and to schedule another meeting. (*Id.* at ¶¶ 86–

87.) On May 12, 2006, Plaintiff's wife called Defendant and spoke to Valot. (*Id.* at ¶ 88.) The

parties dispute what was said during the phone call. Defendant asserts that Plaintiff's wife said

"her husband could not perform any UPS job position with or without [an] accommodation."

(*Id.*) Plaintiff asserts that his wife requested additional time to complete the form, and Valot

replied "[n]ot a problem, just reach out [to] me and we'll set up a meeting when you're ready."

(Pl. 56.1 ¶ 88.) On June 6, 2006, Plaintiff was seriously injured in a motor vehicle accident and

underwent surgery. (*Id.* at ¶ 89.) On June 14, 2006, Plaintiff alerted Defendant that he had been

in an accident and could not attend the scheduled meeting. (*Id.* at ¶ 91.)

    A second "checklist meeting" was held on October 17, 2006 with Plaintiff, Valot,

Michael Ridolfi, District Human Resources Manager, and Wendy Marshall, UPS Occupational

Health Nurse. (Def. 56.1 ¶¶ 95–96; Pl. 56.1 ¶¶ 95–96.) In advance of the meeting, Valot looked

into fulltime management positions in the Western Long Island District and the Metro New York

District. (Def. 56.1 ¶¶ 100–101.) At the meeting, Plaintiff provided Defendant with a written

accommodation form and documents supporting his request for a reasonable accommodation.

(Def. 56.1 ¶¶ 95–96; Pl. 56.1 ¶¶ 95–96.) Plaintiff requested a position outside of the Operations

Department that did not have a graveyard shift, and Plaintiff noted that he could perform

"computer, security, projects, research" positions.  (Def. 56.1 ¶¶ 97–99.)  The parties dispute

what positions were offered to Plaintiff at the meeting.  Defendant claims that Plaintiff was told

about three management positions in the Western Long Island District, as an on-road supervisor,

on-car supervisor, and a preload supervisor, and one position in the Metro New York District, as

a "safety on-road supervisor."  (*Id.* at ¶¶ 102–103.)  Defendant asserts that all four positions

"involved some work with operations."  (*Id.* at ¶ 104.)  Plaintiff asserts he was only told about

the three positions at the Western Long Island District and that the Metro New York District

position was concealed from him.  (Pl. 56.1 ¶¶ 102–103.)  Plaintiff also asserts that the open

position in the Metro New York District was for "Human Resources Safety Supervisor," which

was in the Human Resources Department and not the Operations Department.  (*Id.* at ¶ 104.)

The parties dispute whether Plaintiff said at the meeting that he could not work for Defendant

and whether in fact Plaintiff could perform any of the available positions.  (Def. 56.1 ¶¶ 107–

120; Pl. 56.1 ¶¶ 107–120.)

On October 24, 2006, Defendant sent a letter to Plaintiff stating that Defendant was

"aware of no available position at UPS at this time for which you are qualified and capable of

performing the essential job functions with or without reasonable accommodation."  (Lario Aff.

Ex. 45.)  The letter also stated that Plaintiff's "employment with [Defendant] was deemed

terminated on January 3, 2006[.]"  (*Id.*)  Plaintiff claims he was terminated on October 24, 2006,

the date of this letter. (Pl. 56.1 ¶ 5.)

### b.  Applications for Disability Benefits

On December 5, 2005, Plaintiff filed an application for Social Security Disability benefits

with the Social Security Administration ("SSA").  (Def. 56.1 ¶ 61.)  Plaintiff stated that his

disability began on May 12, 2005.  (Pl. 56.1 ¶ 62.)  On August 9, 2006, the SSA issued a

determination of disability in which Plaintiff was found to be disabled dating back to January 4, 2005 because of Plaintiff's diagnosis of affective disorder and anxiety related disorder/functional nonpsychotic.  (Lario Aff. Ex. 34.)

On January 12, 2006, Plaintiff applied to New York State Office of Temporary and Disability Assistance, for disability benefits.  (Pl. 56.1 ¶ 64; Def. 56.1 ¶ 64.)  Dr. Bluestine submitted a medical certification along with the New York state disability application in which he stated that Plaintiff was "unable to work."[8]  (Def. 56.1 ¶¶ 67–68.)

### c.  EEOC Proceeding

On March 13, 2007, Plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC").  (Goldberg Aff. Ex. 81.)  On April 3, 2007, Plaintiff received a letter from the EEOC stating that it had received Plaintiff's discrimination claim and that it would send a copy to the New York State Division of Human Rights.  (Goldberg Aff. Ex. 81.)  On October 23, 2009, the EEOC issued a determination in Plaintiff's favor.  (Goldberg Aff. Ex. 48.)  On December 22, 2009, the EEOC issued a right to sue letter.  (Goldberg Aff. Ex. 92.)

## II.  Discussion

### a.  Standard of Review

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012); *Doninger v. Niehoff*, 642 F.3d 334, 344 (2d Cir. 2011).  The role of the court is not "to weigh the evidence and determine the truth of the matter but to

---

[8] The parties have provided evidence that Plaintiff submitted an application to New York state in addition to his claim to the SSA.  (Lario Exs. 35, 36.)  However, the parties have not provided any evidence as to whether the New York state application was granted or denied.

determine whether there is a genuine issue for trial." *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.  The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*  The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).  The Second Circuit has made clear that, while summary judgment is available in discrimination cases where there are no genuine issues of material fact, "an extra measure of caution is merited" when considering summary judgment in discrimination cases because "direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions." *Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006).

### b.  Statute of Limitations

Defendant asserts that many of Plaintiff's claims under federal and state law are time barred.  (Def. Summ. J. 21–24.)  For the reasons set forth below, the Court finds that Plaintiff's federal claims that accrued on or after May 2006 are timely, and Plaintiff's state law claims that accrued on or after June 2004 are timely.

### i.  Statutes of Limitation for ADEA and ADA Claims

Defendant asserts that Plaintiff's federal claims prior to June of 2006 are time barred pursuant to the 300-day statute of limitations set forth in the ADA and the ADEA.  (Def. Summ. J. 21–22; Def. Reply 14–15.)  In New York, a plaintiff has 300 days after the alleged

discriminatory incident to file a claim with the EEOC. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007) ("A plaintiff seeking to recover under the ADEA must file a discrimination charge with a state agency within 300 days of the occurrence of the allegedly unlawful employment practice."); *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999) (noting that a plaintiff has 300 days from the date of accrual of an ADA claim to file an EEOC charge). Plaintiff filed his EEOC charge on March 13, 2007.[9] Therefore, all ADEA and ADA claims that occurred on or after May 17, 2006 are timely.

### (a) Retaliation and Age Discrimination Claims

Defendant claims that Plaintiff's claims for age discrimination and retaliation, resulting in his termination, should be barred as untimely because Plaintiff was terminated on January 3, 2006. (Def. Summ. J. 22.) Plaintiff asserts that he was not terminated until October 24, 2006. (Pl. Opp'n 35–36; *see also* Oral Arg. Tr. 50:5–52:2.) Plaintiff argues that he had meetings with Defendant's employees, while they tried to find a reasonable accommodation for him. (Pl. Opp'n 35–36; *see also* Oral Arg. Tr. 50:5–52:2.) Defendant's employee, Wendy Marshall, testified that Plaintiff was reactivated as an employee effective February 10, 2006 and classified as on leave of absence. (Marshall Dep. 35:12–36:5.) It is also undisputed that the "checklist meetings" were held in May 2006 and September 2006. (Def. 56.1 ¶¶ 83, 95–96; Pl. 56.1 ¶¶ 83, 95–96.) Viewing the facts in the light most favorable to Plaintiff, a reasonable jury could find that he was not terminated until October 24, 2006, and, therefore, Plaintiff's age discrimination and retaliation claims based on his termination are timely.

---

[9] Defendant asserts the date of the EEOC filing was April 3, 2007. (Def. Summ. J. 21.) However, April 3, 2007 is the date that EEOC sent a confirmation letter to Plaintiff. (Goldberg Aff. Ex. 81.) Plaintiff's application was received by the EEOC on March 13, 2007. (*Id.*)

**(b) Failure to Accommodate Claims**

Defendant claims that Plaintiff's allegations that Defendant failed to accommodate him in 2001 through 2005 are barred as untimely.  (Def. Summ. J. 22.)  Plaintiff argues that his failure to accommodate claim is a continuing violation and is timely because the last failure to accommodate occurred on October 24, 2006.  (Pl. Opp'n 37.)  "It has been the law of this Circuit that '[u]nder the continuing violation exception to the [federal discrimination statutes] limitations period, if a . . . plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone.'"  *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 155 (2d Cir. 2012) (citations omitted).  However, the continuing violations doctrine does not apply to discrete acts of discrimination, "even if they are related to acts alleged in timely filed charges."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 102 (2002).  Plaintiff's failure to accommodate claims are not continuing violations but discrete actions.  *See Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 134–35 (2d Cir. 2003) ("[A]n employer's rejection of an employee's proposed accommodation for religious practices does not give rise to a continuing violation.  Rather, the rejection is the sort of 'discrete act' that must be the subject of a complaint to the EEOC within 300 days.").[10]  Discrete acts which fall outside of

---

[10] Plaintiff relies on *Liss v. Nassau County*, 425 F. Supp. 2d 335, 340 (E.D.N.Y. 2006) for the proposition that a repeated failure to accommodate claim can be a continuing violation.  (Pl. Opp'n 37.)  However, *Liss* is an outlier and the Court declines to follow it.  *See Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 134–35 (2d Cir. 2003) (failure to accommodate is a discrete act and not part of continuing violation.); *O'Leary v. Town of Huntington*, No. 11-CV-3754, 2012 WL 3842567, at *8 (E.D.N.Y. Sept. 5, 2012) ("[A]n employee who continues working after the denial of a reasonable accommodation may not claim a continuing violation[.]"); *Troeger v. Ellenville Cent. Sch. Dist.*, No. 10-CV-718, 2012 WL 1605532, at *4 (N.D.N.Y. May 8, 2012) ("[The defendant's] alleged failures to accommodate constitute discrete acts, not a continuing violation."); *Davis v. N.Y. Office of Mental Health*, No. 05-CV-5599, 2009 WL 5178440, at *6 (E.D.N.Y. Dec. 31, 2009) (holding that failure to accommodate was not a

the limitations period cannot be brought within it, even if they were "undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period." *Chin*, 685 F.3d at 157.  Plaintiff's claims that predate June 2006 are untimely.  Therefore, Plaintiff's only timely ADA failure to accommodate claim is his claim arising from the "checklist meetings" with Defendant in the summer and fall of 2006.

### (c)  Hostile Work Environment Claims

Defendant asserts that Plaintiff's claims for hostile work environment should be dismissed as untimely because the last time Plaintiff was in the office interacting with other employees was on May 12, 2005.  (Def. Summ. J. 22.)  However, it is undisputed that Plaintiff engaged in the "checklist meetings" in May 2006 and October 2006 and was present in the office for those meeting.  (Def. 56.1 ¶¶ 95–120; Pl. 56.1 ¶¶ 95–120.)  A reasonable jury could find that Plaintiff was subjected to a hostile work environment up until his last checklist meeting in October 2006, since he continued to have meetings in the office.  Hostile work environment claims are subject to a continuing violation analysis.  *Elmenayer*, 318 F.3d at 134–35 (noting that hostile work environment is part of continuing violation because it is "'series of separate acts' that . . . 'collectively constitute' an unlawful employment practice" (citations omitted)); *Davis v. N.Y. Office of Mental Health*, No. 05-CV-5599, 2009 WL 5178440, at *6 (E.D.N.Y. Dec. 31, 2009) (noting that hostile work environment falls under continuing violation); *Lipka v. Potter*, No. 03-CV-381A, 2006 WL 839421, at *4 (W.D.N.Y. Mar. 28, 2006) (same).  Viewing the facts

---

continuing violation); *Lipka v. Potter*, No. 03-CV-381A, 2006 WL 839421, at *4 (W.D.N.Y. Mar. 28, 2006) (same); *Stuevecke v. N.Y. Hosp. Med. Ctr. of Queens*, No. 01-CV-326, 2003 WL 22019073, at *4 (E.D.N.Y. Aug. 26, 2003) (same); *Fol v. City of New York*, No. 01-CV-1115, 2003 WL 21556938, at *4 (S.D.N.Y. July 9, 2003) (same); *Bloom v. N.Y.C. Bd. of Educ. Teachers' Ret. Sys. of N.Y.C.*, No. 00-CV-2728, 2003 WL 1740528, at *10 (S.D.N.Y. Apr. 2, 2003) (same).  The other case cited by Plaintiff, *Cornwell v. Robinson*, 23 F.3d 691, 704 (2d Cir. 1994), is a hostile work environment case and not a failure to accommodate case.

in the light most favorable to Plaintiff, all of Plaintiff's hostile work environment claims are
timely.

### ii. Statutes of Limitation for NYSHRL and NYCHRL Claims

Defendant claims that Plaintiff's NYSHRL and NYCHRL claims are barred by the
applicable three year statute of limitations.  Both the NYSHRL and NYCHRL have a three year
statute of limitations.  *Bonner v. Guccione*, 178 F.3d 581, 584 (2d Cir. 1999) (noting that
NYSHRL has a three year statute of limitations); *Hongyan Lu v. Chase Inv. Servs. Corp.*, 412 F.
App'x 413, 418 (2d Cir. 2011) (noting that NYSHRL and NYCHRL claims have three year
statute of limitations).  The statute of limitations is tolled during the pendency of a complaint
before an administrative body.  *DeNigris v. N.Y.C. Health & Hosps. Corp.*, 861 F. Supp. 2d 185,
192 (S.D.N.Y. 2012) ("Claims brought under the NYSHRL and NYCHRL are subject to a three-
year statute of limitations, which is tolled for the period between the filing of an EEOC charge
and the issuance by the EEOC of a right-to-sue letter."); *Wilson v. N.Y.C. Police Dep't*, No. 09-
CV-2632, 2011 WL 1215735, at *4 (S.D.N.Y. Mar. 25, 2011) ("Courts in this circuit have held
that the statute of limitations applicable to claims under NYCHRL and NYSHRL is tolled during
the period in which the complaint is filed with the EEOC.").

The parties disagree about the tolling of Plaintiff's state law claims.  Defendant asserts
that because Plaintiff never filed a complaint with the state agencies and because there is no
indication on his EEOC complaint that he intended to cross file with the state agencies, Plaintiff
should not get the benefit of tolling.  (Def. Summ. J. 22–24.)  Plaintiff asserts that filing with the
EEOC is sufficient to toll the statute of limitations on Plaintiff's state law claims, and Plaintiff
was not required to file individually with the state agencies in order to receive the benefit of
tolling.  (Pl. Opp'n 38–41.)  Several courts in this circuit have found that filing with the EEOC

alone is sufficient to toll the statute of limitations on related NYSHRL and NYCHRL claims.

*See Butler v. N.Y. Health & Racquet Club*, 768 F. Supp. 2d 516, 536 (S.D.N.Y. 2011) (filing a

complaint with the EEOC was sufficient to toll the statute of limitations on the state claims);

*Wilson*, 2011 WL 1215735, at *4 (same); *Esposito v. Deutsche Bank AG*, No. 07-CV-6722, 2008

WL 5233590, at *5 (S.D.N.Y. Dec. 16, 2008) ("Although the Second Circuit has yet to

definitively opine on the issue of whether the filing of a charge with the EEOC serves to

automatically toll the statute of limitations on claims asserted under NYSHRL and NYCHRL,

numerous courts in this Circuit have held that the three-year statute of limitations applicable to

claims under NYSHRL and NYCHRL 'is tolled during the period in which a complaint is filed

. . . with the EEOC.'" (alteration in original) (citations omitted)).[11]  The Court finds that

Plaintiff's filing with the EEOC tolled his NYSHRL and NYCHRL claims.  Since the NYSHRL

and NYCHRL have a three year statute of limitations and Plaintiff filed his EEOC complaint on

March 13, 2007, Plaintiff's claims are tolled to June 2004.[12]

---

[11] The Court notes that some courts have found that an EEOC filing is not sufficient.  *See, e.g.*, *Collier v. Boymelgreen Developers*, No. 06-CV-5425, 2008 WL 835706, at *11 (E.D.N.Y. Mar. 28, 2008) (noting that courts in the Second Circuit are split on this issue and finding that the EEOC filing alone did not toll state claims).  However, given that Plaintiff's letter from the EEOC acknowledging receipt of his complaint specifically states that a copy of his complaint would be sent to the New York State Division of Human Rights, Plaintiff should get the benefit of dual filing in this instance.  (*See* Goldberg. Aff. Ex. 81.)

[12] The EEOC proceeding did not terminate until Plaintiff received his right to sue letter on December 22, 2009, (Goldberg Aff. Ex. 92), which ended Plaintiff's tolling period.  *DeNigris v. N.Y.C. Health & Hospitals Corp.*, 861 F. Supp. 2d 185, 192 (S.D.N.Y. 2012) ("Claims brought under the NYSHRL and NYCHRL are subject to a three-year statute of limitations, which is tolled for the period between the filing of an EEOC charge and the issuance by the EEOC of a right-to-sue letter."); *Sundaram v. Brookhaven Nat. Labs.*, 424 F. Supp. 2d 545, 565 (E.D.N.Y. 2006) (discussing EEOC filing and tolling of NYSHRL claims).  This action was filed March 10, 2010.

### c.  ADA Disability Claim

Claims for discrimination under the ADA are analyzed under the *McDonnell Douglas*, 411 U.S. 792 (1973), burden shifting test.  *Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc.*, 198 F.3d 68, 72 (2d Cir. 1999).  To establish a prima facie case of discrimination under the ADA, a plaintiff must allege that "(1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of his disability or perceived disability."  *Kinneary v. City of New York*, 601 F.3d 151, 155–56 (2d Cir. 2010) (citations omitted); *see also Brady v. Wal Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008) (outlining disability prima facie test).  The Second Circuit has "ruled that failure to make reasonable accommodation, when the employee has satisfied the first three elements of his claim, amounts to discharge 'because of' his disability."[13]  *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 (2d Cir. 2000).  Therefore, a prima facie case may also be established by showing that (1) he is a person with a disability under the meaning of the ADA, (2) his employer is a covered entity and had notice of the plaintiff's disability, (3) the plaintiff could perform the essential functions of his job with an accommodation, and (4) the defendant

---

[13] The ADA prohibits an employer from refusing to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability."  42 U.S.C. § 12112(b)(5)(A).  The term "reasonable accommodation" means "[m]odifications or adjustments to the work environment . . . that enable an individual with a disability who is qualified to perform the essential functions of that position" as well as "[m]odifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities."  29 C.F.R. §§ 1630.2(o)(1)(ii)–(iii).  "The term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires."  29 C.F.R. § 1630.2(n)(1).

refused to make such an accommodation.  *McMillan v. City of New York*, No. 11-3932, --- F.3d

---, 2013 WL 779742, at *4 (2d Cir. Mar. 4, 2013) (citing *McBride v. BIC Consumer Products

Mfg. Co., Inc.*, 583 F.3d 92, 96–97 (2d Cir. 2009)).  "Once the plaintiff has demonstrated that

there is a 'plausible accommodation, the costs of which, facially, do not clearly exceed its

benefits,' the defendant bears the burden of proving that the requested accommodation is not

reasonable."  *McElwee v. County of Orange*, 700 F.3d 635, 642 (2d Cir. 2012) (quoting

*Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995)).  Plaintiff's claim is based

on Defendant's alleged failure to accommodate, resulting in Plaintiff's termination.[14]  For the

reasons set forth below, the Court finds that a reasonable jury could find that Defendant failed to

provide Plaintiff with a reasonable accommodation and, thus, discriminated against Plaintiff

because of his disability.

---

[14] The parties address disability discrimination and failure to accommodate as two
separate claims in their summary judgment submissions.  However, in the Complaint and at oral
argument, Plaintiff stated that his unlawful termination claim is based on Defendant's failure to
provide a reasonable accommodation.  (Compl. ¶¶ 104–13; Oral Arg. Tr. 61:22–63:19.)
Therefore, the Court considers these claims together as asserting a failure to accommodate claim.
"Terminating a disabled employee, . . . who can perform the essential functions of the job but
cannot return to work because the employer has denied his request for reasonable
accommodation, is disability discrimination under the ADA.  'Failure to consider the possibility
of reasonable accommodation for . . . disabilities, if it leads to discharge for performance
inadequacies resulting from the disabilities, amounts to a discharge solely because of the
disabilities.'"  *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 338 (2d Cir. 2000) (quoting
*Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 143 (2d Cir. 1995)).

### i.  Plaintiff's Prima Facie Case[15]

#### (a) Disability

Defendant appears to concede that Plaintiff was disabled in 2006.[16]  (*See* Def. Summ. J. 30 (stating that Plaintiff cannot maintain that he was a qualified individual because he was unable to perform any work with or without accommodation starting in 2006); Oral Arg. Tr. 17:23–18:15 (stating that Plaintiff cannot make out a prima facie case since he was not qualified for the position because he could not perform it with or without a reasonable accommodation).) Assuming that Defendant disputes that Plaintiff was disabled in 2006, the Court finds that there are sufficient facts from which a reasonable jury could find that Plaintiff was disabled in 2006.

To establish a disability, "plaintiff must first show that she suffers from a physical or mental impairment.  Second, plaintiff must identify the activity claimed to be impaired and establish that it constitutes a 'major life activity.'  Third, [] plaintiff must show that her impairment 'substantially limits' the major life activity previously identified." *Weixel v. Bd. of Educ. of N.Y.C.*, 287 F.3d 138, 147 (2d Cir. 2002) (citations omitted); *see also Villanti v. Cold Spring Harbor Cent. Sch. Dist.*, 733 F. Supp. 2d 371, 377–78 (E.D.N.Y. 2010) (discussing the three step test); *Reilly v. Revlon, Inc.*, 620 F. Supp. 2d 524, 539 (S.D.N.Y. 2009) (same).  "In addition, . . . the identified major life activity must be 'of central importance to daily life.'" *Weixel*, 287 F.3d at 147.

---

[15] Defendant does not dispute that it is a covered entity under the ADA and the ADEA. (*See* Def. Summ. J. 24–40.)  Therefore, the Court only considers the other three elements of the prima facie test.

[16] Defendant disputes that Plaintiff was disabled in 2004.  (Def. Summ. J. 35–36.)  All of Plaintiff's ADA reasonable accommodation claims prior to June 2006, as discussed above, are time barred.  *See supra* Part II(b)(i).  Therefore, the Court need not consider Plaintiff's ADA reasonable accommodation claims pre-dating 2006.

17

Plaintiff meets the first prong of the test.  On January 25, 2006, Plaintiff submitted a form from Dr. Bluestine ("January 2006 Doctor Form") to Defendant, which stated that Plaintiff suffered from ADHD.  (Lario Aff. Ex. 22.)  ADHD is a mental impairment that is covered by the ADA.  *Geoghan v. Long Island R.R.*, No. 06-CV-1435, 2009 WL 982451, at *10 (E.D.N.Y. Apr. 9, 2009); *Montgomery v. Chertoff*, No. 03-CV-5387, 2007 WL 1233551, at *5 (E.D.N.Y. Apr. 25, 2007); *DeMar v. Car-Freshner Corp.*, 49 F. Supp. 2d 84, 89 (N.D.N.Y. 1999).  Plaintiff has also been diagnosed with major depression.[17]  (Goldberg Aff. Ex. 42.)  Depression is also a mental impairment covered by the ADA.  *Pierce v. Highland Falls-Fort Montgomery Cent. Sch. Dist.*, No. 08-CV-1948, 2011 WL 4526520, at *7 (S.D.N.Y. Sept. 28, 2011); *see also McCowan v. HSBC Bank USA, N.A.*, 689 F. Supp. 2d 390, 400 (E.D.N.Y. 2010); *Reilly*, 620 F. Supp. 2d at 539–40.

Plaintiff also meets the second prong by establishing that his mental impairment affected a major life activity.  The January 2006 Doctor Form states that Plaintiff's impairments include problems with memory, focus, and hyperactivity.  (Lario Aff. Ex. 22.)  Plaintiff was also easily distracted and had chronic sleep disturbance.  (*Id.*)  Plaintiff's listed impairments correspond to the major life activities of thinking, concentration and sleeping.  *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 165 (2d Cir. 2013) ("'Major life activities' are further defined to include 'caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.'"  (quoting 42 U.S.C. § 12102(2))); *Wega v. Ctr. for Disability Rights Inc.*, 395 F. App'x 782, 784 (2d Cir. 2010) (summary order) ("The ADA defines 'major

---

[17] Plaintiff's April 27, 2004 request for a reasonable accommodation was accompanied by a cover letter from Dr. Bluestine which stated that Plaintiff suffered from "depression and panic."  (Goldberg Aff. Ex. 53.)

18

life activities' to include . . . 'thinking[.]'"); *Felix v. N.Y.C. Transit Auth.*, 324 F.3d 102, 106–07

(2d Cir. 2003) (noting that sleeping is a major life activity); *McCowan*, 689 F. Supp. 2d at 400

(same); *Geoghan*, 2009 WL 982451, at *11 ("In the Second Circuit . . . district courts have

tended to classify concentration as a major life activity for purposes of ADA claims." (collecting

cases) (citations omitted)).

A reasonable jury could find that Plaintiff's impairments substantially limited his major

life activities of thinking, concentration, and sleeping. "According to the EEOC regulations,

'substantially limit[ed]' means '[u]nable to perform a major life activity that the average person

in the general population can perform'; or '[s]ignificantly restricted as to the condition, manner

or duration under which an individual can perform a particular major life activity as compared to

the condition, manner, or duration under which the average person in the general population can

perform that same major life activity.'" *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S.

184, 195–96 (2002) (quoting 29 CFR § 1630.2(j)).[18] "In determining whether an individual is

substantially limited in a major life activity, the regulations instruct that the following factors

should be considered: '[t]he nature and severity of the impairment; [t]he duration or expected

duration of the impairment; and [t]he permanent or long-term impact, or the expected permanent

---

[18] Congress amended the ADA in 2008. In the amendment, Congress rejected "the Supreme Court's interpretation of the term 'disability' in *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 [] (1999), and *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 [] (2002), and . . . expand[ed] the class of individuals who are entitled to protection under the ADA." *Alexiadis v. N.Y. Coll. of Health Professions*, No. 10-CV-3509, 2012 WL 4130521, at *7 (E.D.N.Y. Sept. 20, 2012). However, courts in the Second Circuit use the disability standard in effect at the time that the alleged discriminatory conduct occurred. *Thomsen v. Stantec, Inc.*, 483 F. App'x 620, 622 (2d Cir. 2012) (summary order), *cert. denied*, 133 S. Ct. 931 (2013); *Price v. Mount Sinai Hosp.*, 458 F. App'x 49, 50–51 (2d Cir. 2012) (summary order); *Villanti v. Cold Spring Harbor Cent. Sch. Dist.*, 733 F. Supp. 2d 371, 377 (E.D.N.Y. 2010). Given that the last alleged discriminatory act occurred in 2006, Plaintiff's claim is analyzed under the pre-amendment ADA.

or long-term impact of or resulting from the impairment.'"  *Toyota*, 534 U.S. at 196 (alteration in original) (quoting §§ 1630.2(j)(2)(i)-(iii)).  Plaintiff's impairments were listed as lasting "indefinitely" and Plaintiff was given medication and therapy to treat them.  (Lario Aff. Ex. 22.)  In a letter dated January 9, 2006, Dr. Bluestine wrote that Plaintiff's condition had worsened to the point that medications were no longer sufficient and Plaintiff was given Electro-Convulsive Therapy ("ECT").[19]  (Goldberg Aff. Ex. 42.)  In the January 2006 Doctor Form, Dr. Bluestine noted that without a reasonable accommodation, Plaintiff would be unable to work.  (Lario Aff. Ex. 22.)  Based on Dr. Bluestine's statements that Plaintiff could only return to work with a reasonable accommodation, that Plaintiff's disability would last indefinitely, and that ECT had to be implemented because medication was not sufficiently effective, a reasonable jury could find that Plaintiff's impairments are both severe and long lasting meeting the substantial limitation test.  *See, e.g.*, *Reilly*, 620 F. Supp. 2d at 540 ("[A] treating physician's diagnosis that a ADA-claimant is 'clearly not ready' to return to work because of depression and that she requires some accommodation in order to get back to work creates a material question of fact about whether the claimant is substantially limited in the major life activity of working."); *Geoghan*, 2009 WL 982451, at *13 ("As to ADHD, however, plaintiff's doctor's ADHD diagnosis in conjunction with plaintiff's own detailed description of his difficulties taking the Practical Examinations constitute a sufficient basis on which a reasonable jury could conclude that he is disabled.").

### (b) Qualified for the Position

Defendant argues that Plaintiff is estopped from claiming that he was "qualified to perform the essential functions of the job with or without reasonable accommodation" because

---

[19] "Electroconvulsive therapy is a treatment for depression that uses electricity to trigger a seizure."  *Health Guide: Electroconvulsive Therapy*, N.Y. Times (last visited Mar. 13, 2013), http://health.nytimes.com/health/guides/test/electroconvulsive-therapy/overview.html.

he filed a Social Security Disability Insurance ("SSDI") application with the SSA, asserting that he was totally disabled. (Def. Summ. J. 17–21.) Defendant also argues that even if Plaintiff is not estopped from arguing he was qualified, Plaintiff was unable to perform the essential functions of available jobs with or without a reasonable accommodation, and, therefore, he cannot establish that he was a qualified individual under the terms of the statute. (*Id.* at 26–28.) For the following reasons, the Court finds that Plaintiff is not estopped from asserting that he is a qualified individual under the ADA and a reasonable jury could find that Plaintiff was a qualified individual under the terms of the statute.

### (1) Equitable Estoppel

Defendant claims that Plaintiff is judicially estopped from claiming he was qualified because, in his application for SSDI, Plaintiff asserted that he was unable to work because of his disability. (Def. Summ. J. 17–22.) Plaintiff is not judicially estopped from asserting that he was a qualified individual under the ADA.

Defendant relies on *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795 (1999) to support its argument. In *Cleveland*, the Supreme Court held that "pursuit, and receipt, of SSDI benefits does not automatically estop the recipient from pursuing an ADA claim" because, in determining whether an individual is disabled for SSDI purposes, the SSA "does *not* take the possibility of 'reasonable accommodation' into account, nor need an applicant refer to the possibility of reasonable accommodation when she applies for SSDI." 526 U.S at 797–98, 803 (emphasis in original). Nevertheless, "[w]hen faced with a plaintiff's previous sworn statement asserting 'total disability' or the like, the court should require an explanation of any apparent inconsistency with the necessary elements of an ADA claim. To defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth

of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless

'perform the essential functions' of her job, with or without 'reasonable accommodation.'"  *Id.* at

807.  The Supreme Court accepted as a reasonable explanation, plaintiff's statement that SSA did

not consider reasonable accommodations and that the "SSDI statements were 'accurate

statements' if examined 'in the time period in which they were made.'"  *Id.* at 807 (citations

omitted).

　　　The Second Circuit has allowed plaintiffs to argue that the reason for the discrepancy

between their SSDI statement and their ADA suit is the possibility of reasonable

accommodations.  *See, e.g.*, *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 104 (2d Cir. 2010)

(noting that the plaintiff's statement that he was disabled in his SSDI form was not a

contradiction because the SSDI form did not consider whether or not a plaintiff could work with

a reasonable accommodation); *Parker*, 204 F.3d at 333–35 (holding that a plaintiff would not be

bound by a general assertion that he or she was disabled in SSDI as long as he or she could

explain any inconsistencies between the SSDI application and ADA suit); *see also Mitchell v.*

*Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 7 (2d Cir. 1999) (noting that consistent with

*Cleveland* the court had not applied categorical estoppel by "estopp[ing] from arguing that he

was able to work with a reasonable accommodation once he asserted [in his SSDI application]

. . . that he was too disabled to work").  Plaintiff asserts the reason he considered himself unable

to work in his SSDI application was because Defendant refused to give Plaintiff a reasonable

accommodation.  (Pl. Opp'n 44–47.)  This assertion is sufficient at this stage to meet Plaintiff's

burden.

　　　When a plaintiff asserts the reason for the difference between the general statement in an

SSDI form and the ADA complaint is because SSDI did not consider a reasonable

accommodation, courts then consider whether any specific factual statements in the SSDI form preclude any of the factual statements in the ADA litigation.  *See, e.g.*, *DeRosa*, 595 F.3d at 102–03; *Jernigan v. Dalton Mgmt. Co., LLC*, 819 F. Supp. 2d 282, 288–89 (S.D.N.Y. 2011).  A factual statement on the SSDI form will only preclude a factual statement in the ADA litigation, if it is in direct contradiction, i.e., if Plaintiff told Defendant he could concentrate at work and told the SSA that he could not concentrate.  *See, e.g.*, *DeRosa*, 595 F.3d at 102–04 (holding that the plaintiff's fact statements about what he could and could not do on his SSDI application did not contradict his assertion that he could work with a reasonable accommodation); *Parker*, 204 F.3d at 334 (holding that "statements in his applications for long-term disability and SSDI benefits do not fall within the category of 'directly conflicting statements about purely factual matters'"); *Mitchell*, 190 F.3d at 7 (holding that the plaintiff was precluded from asserting that he could walk and stand in the ADA litigation when he had asserted that he could not walk or stand to the SSA); *Jernigan*, 819 F. Supp. 2d at 288–89 ("Only 'directly conflicting statements about purely factual matters' made in an SSDI application may estop a plaintiff in the ADA context." (citations omitted)); *Picinich v. United Parcel Serv.*, 321 F. Supp. 2d 485, 510 (N.D.N.Y. 2004) (noting that the plaintiff did not make contradictory statements about specific tasks he could perform).

Plaintiff's specific statements to the SSA do not contradict Plaintiff's assertions in his Complaint before this Court.[20]  In Plaintiff's disability file from the SSA, dated January 4, 2006, Plaintiff stated his disabilities were "[m]ajor depression, panic disorder, anxiety disorder[, and]

---

[20] The Court notes that, according to Defendant's Flexible Benefits Policy, Plaintiff was required to apply for SSDI, while he was out of work on short term disability leave.  The plan states "[i]t is a requirement of the Plan that you apply for the Social Security disability insurance benefit as well as any state-provided disability benefits to which you may be entitled."  (Lario Ex. 20 at 107.)

[s]evere ADHD[.]"  (Lario Aff. Ex. 37 at 1.)  He listed his symptoms as "crying spells and anxiety and panic attacks . . . problems sleeping at night due to severe depression and problems with memory and concentration."  (*Id.* at 2.)  He also stated that he was "irritable and [could not] start and finish projects."  (*Id.*)  In response to the question why Plaintiff stopped working, he stated:

> Concentration is a big issue for me.  I have problems just getting out of bed and showering and getting dressed.  I am currently receiving ECT treatments.  I get frustrated and distracted very easily.  I am not able to deal with stress and I get overwhelmed easily. I get disoriented.  I have severe ADHD and problems with memory and concentration.

(*Id.*)  Other portions of his disability file reflect similar conditions and symptoms.  (*See e.g.*, Lario Aff. Exs. 38, 39.)  Plaintiff has consistently asserted in his reasonable accommodation requests to Defendant and in this litigation that he suffers from anxiety, a lack of concentration and the other symptoms alleged in his SSA file.  (*See* Pl. Opp'n 44–47; Lario Ex. 22, Goldberg Ex. 53.)  Plaintiff asserts that his symptoms would have been mitigated by a reasonable accommodation of a transfer out of the Operations Department.  (Pl. Opp'n 44–47.)  Since Plaintiff's statements in support of his SSDI application are consistent with his assertions in his requests for accommodation to Defendant and in this litigation, he is not estopped from asserting that he was qualified for the position.[21]

---

[21] As with his statements to the SSA, Plaintiff's statements in his New York State disability application do not contradict Plaintiff's claims that he could work with a reasonable accommodation.  In his New York State disability application, Plaintiff lists his symptoms as loss of memory, focus, appetite and concentration.  (Lario Aff. Ex. 36 at 10.)  He also states that he experiences sleep disturbances and that he cannot "work in high stress overstimulated area." (*Id.*)  He indicates that he goes outside less, and he has stopped going to work.  (*Id.* at 5, 7.) Plaintiff also states that after being refused an accommodation, he suffered a heart attack.  (*Id.* at 9.)  Nothing in the application differs from the information that Plaintiff is presenting to this Court.  Similarly, Plaintiff's request for long-term disability leave based on Defendant's Flexible Benefits Plan does not contradict statements in this litigation.  (Goldberg Aff. Ex. 77.)  In a letter dated August 14, 2007, seeking long-term disability leave coverage, Plaintiff advised Aetna that he tried to return to work from medical leave but was denied a reasonable accommodation.  (*Id.*)

**(2) Performance of the Job With or Without a Reasonable Accommodation**

Defendant argues that even if Plaintiff is not estopped from arguing that he is qualified for the position, Plaintiff's claim still fails because he could not perform the job with a reasonable accommodation. The Court finds that a reasonable jury could find that Plaintiff could have performed a job for Defendant with a reasonable accommodation.

A "qualified individual with a disability" is someone who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *Jackan v. N.Y. Dep't of Labor*, 205 F.3d 562, 565–66 (2d Cir. 2000). The requested accommodation must be reasonable and connected to Plaintiff's disability. *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995); *see also Scalera v. Electrograph Sys., Inc.*, 848 F. Supp. 2d 352, 367 (E.D.N.Y. 2012) ("[T]here must be some sort of causal connection between the Plaintiff's disability and the requested accommodation."). A "reasonable accommodation may include, *inter alia,* modification of job duties and schedules, alteration of the facilities in which a job is performed, acquisition of devices to assist the performance of job duties, and, under certain circumstances, 'reassignment to a vacant position.'" *McBride*, 583 F.3d at 97 (citations omitted). "The plaintiff bears the burdens of both production and persuasion as to the existence of some accommodation that would allow her to perform the essential functions of her employment, including the existence of a vacant position for which she is qualified." *McBride*, 583 F.3d at 97; *see also Jackan*, 205 F.3d at 566 ("[A] plaintiff bears the burden of establishing that a vacancy existed into which he or she might have been transferred."). However, the determination of what positions are vacant does not happen in a vacuum, and the ADA sets forth a frame work where the employee and employer are expected to work together to locate possible reasonable accommodations.

25

*McBride*, 583 F.3d at 99 ("The ADA envisions an 'interactive process' by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated." (citations and alterations omitted)).  Nevertheless, "failure to engage in an interactive process does not form the basis of an ADA claim in the absence of evidence that accommodation was possible."  *McBride*, 583 F.3d at 100.

In January 2006, after Plaintiff's condition worsened, he asserts that a transfer out of the Operations Department would have been a reasonable accommodation that would have allowed him to perform his job.[22]  (Pl. 56.1 ¶¶ 44–45; 49–50; Goldberg Aff. Ex. 76.)  Defendant asserts that there was no open position outside of the Operations Department in 2006.  (Def. Reply 24–26; Oral Arg. Tr. 18:22–22:7, 24:11–7.)  According to Defendant, the safety supervisor position on which Plaintiff relies had 60 percent of its work coming from the Operations Department. (Def. Reply 24–26; Oral Arg. Tr. 18:22–22:7, 24:11–7.)  Plaintiff claims that the safety supervisor position was not in the Operations Department but the Human Resources Department. (Pl. Opp'n 52–53.)  According to Plaintiff, 60 percent of the work was desk work, there were no actual deliveries involved, and most of the training associated with the job occurred in Defendant's parking lot and not on the road.  (Oral Arg. Tr. 53:17–55:13.)  Plaintiff deposed Defendant's employee, Rita Turcios, who held the position, and she testified that the position was located in the Metro New York District, in the Human Resources Department and that 60 percent of her work was desk work.  (Turcios Dep. 22:20–25:9.)  In addition, Plaintiff has provided an e-mail between Defendant's employees dated October 16, 2006, which states "Metro New York currently has one open Full Time Supervisor Requisition Open: Supervisor: 1. Human

---

[22] To support his request, Dr. Bluestine wrote a letter, dated January 13, 2006, stating that Plaintiff needed an accommodation that was a day shift, with a maximum of 12 hours and was not overly stimulating.  (Goldberg Aff. Ex. 42.).

Resources Safety Supervisor."  (Goldberg Aff. Ex. 47.)  Plaintiff testified at his deposition and affirmed in his sworn affidavit that he was never offered this position and that this position would have been a reasonable accommodation, since it was a position outside of the Operations Department, with a daytime shift, located in the Metro New York District, and, thus, closer to his home.  (Pl. Opp'n 52–53; Pl. Dep. 124:7–126:24, 317:14–318:5; Pl. Aff. ¶¶ 11–19.)  Construing the facts in the light most favorable to Plaintiff, there was at least one available position in 2006 that arguably could have reasonably accommodated Plaintiff.  Therefore, Plaintiff meets the qualified individual prong of the prima facie test.

### (c)  Refusal to Accommodate

The next question is whether Defendant refused to accommodate Plaintiff.  Plaintiff asserts that his requests were denied because he was never offered the safety supervisor position.  (Pl. Opp'n 52–53; Pl. Dep. 124:7–126:24, 317:14–318:5; Pl. Aff. ¶¶ 11–19.)  Defendant argues that it told Plaintiff about the position, and, regardless, the position would not have been a good fit for Plaintiff because 60 percent of the work was in the Operations Department.  (Def. Summ. J. 33–35.)  As discussed above, a reasonable jury could find that the safety supervisor position was a reasonable accommodation, and Plaintiff has given sworn testimony that this position was not offered to him.  (Pl. Opp'n 52–53; Pl. Dep. 124:7–126:24, 317:14–318:5; Pl. Aff. at ¶¶ 11–19.)  Viewing the facts in the light most favorable to Plaintiff, a reasonable jury could find that Defendant did not tell Plaintiff about the safety supervisor position and, thus, refused to accommodate Plaintiff.[23]

---

[23] Ultimately, the jury will decide whether to credit Plaintiff's version or Defendant's version of the facts.  *Fincher v. Depository Trust and Clearing Corp.*, 604 F.3d 712, 725 (2d Cir. 2010) ("[T]he assessment of a witness's credibility is a function reserved for the jury."); *Jeffreys v. City of New York*, 426 F.3d 549, 553–54 (2d Cir. 2005) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on

### ii.  Undue Hardship

Having determined that Plaintiff can make out a prima facie case, the Court considers whether Plaintiff's requested accommodation is reasonable or whether it was an undue hardship on Defendant.  "[T]he defendant's burden of persuading the factfinder that the plaintiff's proposed accommodation is unreasonable merges, in effect, with its burden of showing, as an affirmative defense, that the proposed accommodation would cause it to suffer an undue hardship." *Borkowski*, 63 F.3d at 138.  "'Undue hardship'. . . requires a detailed showing that the proposed accommodation would 'requir[e] significant difficulty or expense' in light of specific enumerated statutory factors."[24] *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 121–22 (2d Cir. 2004) (citations omitted).  Defendant argues that it did not have a vacant position that would have been an accommodation to Plaintiff, and, thus, would have had to create one to accommodate Plaintiff.  (Def. Reply 24–26.)  "The ADA lists reassignment to an existing, vacant position as a possible reasonable accommodation, but the ADA does not require creating a new position for a disabled employee[.]" *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 187 (2d Cir. 2006) (citations omitted).  However, whether or not the safety supervisor position, which was vacant, was a reasonable accommodation is a disputed fact.  Therefore, viewing the facts in

---

summary judgment."  (alteration in original) (quoting *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996)); *Milfort v. Prevete*, No. 10-CV-4467, 2013 WL 519041, at *5 (E.D.N.Y. Feb. 13, 2013) ("'[T]the credibility of witnesses is not to be assessed by the court on a motion for summary judgment.'  'Resolutions of credibility conflicts and choices between conflicting versions of the facts are matters for the jury, not for the court on summary judgment.'"  (citations omitted)).

[24] "[R]elevant factors . . . include (1) the employer's type of operation, including its composition, structure, and the functions of its workforce; (2) the employer's overall financial resources; (3) the financial resources involved in the provision of the reasonable accommodation; and (4) the impact of such accommodation upon the employer's operation." *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 122 (2d Cir. 2004) (citing 42 U.S.C. § 12111(10)(A)-(B)).

the light most favorable to Plaintiff, a reasonable accommodation was not an undue hardship on Defendant and Plaintiff's claim survives summary judgment.  *See, e.g.*, *Parker*, 204 F.3d at 338 (failure to give an employee a reasonable accommodation and instead terminating the employee for exhaustion of leave time could be disability discrimination); *see also Kinneary*, 601 F.3d at 156 ("It is true that '[t]erminating a disabled employee . . . who can perform the essential functions of the job but cannot return to work because the employer has denied his request for reasonable accommodation, is disability discrimination under the ADA.'"  (alteration in original) (quoting *Parker*, 204 F.3d at 338)).  The Court denies Defendant's summary judgment motion as to Plaintiff's ADA failure to accommodate claim.

### d.  NYSHRL and NYCHRL Disability Claims

The elements to find discrimination under the NYSHRL and NYCHRL generally track the ADA.[25]  *Kinneary*, 601 F.3d at 158; *Primmer v. CBS Studios, Inc.*, 667 F. Supp. 2d 248, 261–62 (S.D.N.Y. 2009).  However, there are a few differences between the elements of NYSHRL and NYCHRL claims and the elements of ADA claims, which affect Plaintiff's claims.  First, as discussed above, unlike federal law which bars claims that were not filed with the administrative agency within 300 days of accrual, the NYSHRL and NYCHRL have a three year statute of limitations that is tolled during the pendency of an administrative filing.  *DeNigris*, 861 F. Supp. 2d at 192; *Butler*, 768 F. Supp. 2d at 536; *Wilson*, 2011 WL 1215735, at *4.  Therefore, Plaintiff may bring a discrimination claim based on acts that occurred in June 2004 or later.[26]

_____

[25] Since Plaintiff has provided sufficient evidence to support his 2006 disability discrimination claim under the ADA, he has also provided sufficient evidence to sustain his 2006 disability claim under the NYSHRL and NYCHRL.

[26] As discussed above, Plaintiff's NYSHRL and NYCHRL claims were tolled based on Plaintiff's EEOC filing.  *See supra* Part II(b)(ii).

Second, the NYSHRL and NYCHRL "have a broader definition of 'disability' than does the ADA; neither statute requires any showing that the disability substantially limits a major life activity." *Reilly*, 620 F. Supp. 2d at 541 (citing *Giordano v. City of New York*, 274 F.3d 740, 753 (2d Cir. 2001)); *see also Welch v. United Parcel Serv., Inc.*, 871 F. Supp. 2d 164, 198 (E.D.N.Y. 2012) (noting that the NYSHRL is not a "carbon copy of the ADA" and that NYCHRL provisions are "'more liberally' [construed] than their federal and state counterparts"); *Primmer*, 667 F. Supp. 2d at 261–62 ("The only major difference in the analysis of disability discrimination under the state and city statutes as compared to the ADA is that the definition of disability under the former is considerably broader than the ADA definition, at least before the amendments of 2008."); *Phillips v. City of New York*, 884 N.Y.S.2d 369, 373 (App. Div. 2009) ("The [NYSHRL] provides protections broader [than] the . . . ADA; and the [NYCHRL] is broader still[.]").  Under the NYSHRL and NYCHRL, Plaintiff need only prove that he has a "medically diagnosable impairment." *Attis v. Solow Realty Dev. Co.*, 522 F. Supp. 2d 623, 631–32 (S.D.N.Y. 2007); *see also McCowan*, 689 F. Supp. 2d at 402 ("[U]nder state law, a disability need only be a demonstrable impairment; it does not have to substantially limit a major life activity.").  Courts have found that being diagnosed with depression or ADHD is sufficient to establish the disability prong and a plaintiff survives summary judgment, as long as the other elements of the prima facie test are met. *See McCowan*, 689 F. Supp. 2d at 402 (diagnosis of depression was sufficient to establish a disability); *Reilly*, 620 F. Supp. 2d at 541 (same); *Geoghan*, 2009 WL 982451, at *13 (holding that since plaintiff had sustained his claim for disability discrimination based on his ADHD, he had also sustained a claim under the NYSHRL).

30

Third, "summary judgment is not available where there is a genuine dispute as to whether the employer has engaged in a good faith interactive process." *Phillips*, 884 N.Y.S.2d at 373; *see also Romanello v. Intesa Sanpaolo S.p.A.*, 949 N.Y.S.2d 345, 348 (App. Div. 2012) ("[U]nder both the State HRL and the City HRL, an employer is obligated to engage a disabled employee in a 'good faith interactive process' to identify a reasonable accommodation that will permit the employee to continue in the position.").

Plaintiff's 2004 requests for accommodation survive Defendant's motion for summary judgment.[27] Dr. Bluestine diagnosed Plaintiff with major depression and panic disorder with agoraphobia. (Pl. 56.1 ¶ 35.) On April 27, 2004 and June 8, 2004, Plaintiff requested a reasonable accommodation through the Accommodation Process, with certifications from Dr. Bluestine. (Def. 56.1 ¶¶ 37–38, 40–41.) The April 27, 2004 request was accompanied by a cover letter from Dr. Bluestine, which stated that Plaintiff suffered from "depression and panic." (Goldberg Aff. Ex. 53.) As discussed above, depression is a disability under NYSHRL and NYCHRL. *See supra* Part II(d)(i).

---

[27] Failure to accommodate claims accrue on the date when a request is denied. *See Gaston v. N.Y.C. Dep't of Health Office of Chief Med. Exam'r*, 432 F. Supp. 2d 321, 327 (S.D.N.Y. 2006) (noting that a NYSHRL "claim does not accrue 'when a person has a mere hunch, hint, suspicion, or rumor of a claim. Rather, accrual occurs when the plaintiff has discovered the critical facts of both his injury and its cause'" (citations omitted)); *Milani v. Int'l Bus. Machines Corp., Inc.*, 322 F. Supp. 2d 434, 451 (S.D.N.Y. 2004) (noting that for NYSHRL and NYCHRL, "employment discrimination claim accrues on the date that an adverse employment determination is made and communicated to the plaintiff." (citations omitted)), *aff'd sub nom.*, *Milani v. Int'l Bus. Machines Corp.*, 137 F. App'x 430 (2d Cir. 2005); *see also Windhauser v. Bd. of Supervisors for La. State Univ. & Agr. & Mech. Coll.*, 360 F. App'x 562, 566 (5th Cir. 2010) (counting the accrual date from the date of the denial of the request for a reasonable accommodation); *Herr v. City of Chicago*, 447 F. Supp. 2d 915, 919 (N.D. Ill. 2006) (holding that the plaintiff's failure to accommodate claim accrued on the date his request was denied); *Nakis v. Potter*, No. 01-CV-10047, 2004 WL 2903718, at *15 (S.D.N.Y. Dec. 15, 2004) ("It follows that a claim based on a failure to accommodate does not accrue until that reasonable time has expired or the employer has irrevocably refused to make the accommodation."). Since the April 2004 request was denied by letter dated June 3, 2004 and the June 2004 request was denied by letter September 15, 2004, both requests are timely. (Goldberg Exs. 26, 70.)

Plaintiff asserts that he could have performed the Hub Supervisor position if he had been granted his reasonable accommodation and been given an earlier shift.  (Pl. Opp'n 44–45, 49–50; Goldberg Aff. Exs. 53, 44, 56.)  Defendant argues that Plaintiff has supplied no evidence that changing shifts would have been sufficient.  (Def. Reply 24–26.)  However, Plaintiff has supplied a contemporaneous letter from Dr. Bluestine which stated that Plaintiff should not be on the night shift because Plaintiff's medications must be taken at night due to their "sedative properties."  (Goldberg Aff. Ex. 53.)  Defendant also argues that no day shift existed in 2004. (Def. Summ. J. 35–36.)  Plaintiff asserts that even if no day shift existed in the Operations Department, Plaintiff could have been transferred out of the Operations Department, to a department with day shifts.  (Pl. Opp'n 53–54.).  Drawing all inferences in favor of Plaintiff, he has produced sufficient evidence that a reasonable jury could find that a reasonable accommodation existed and that Plaintiff was denied the accommodation.  The Court denies Defendant's summary judgment motion as to Plaintiff's NYSHRL and NYCHRL failure to accommodate claims.

### e.  ADEA Discrimination Claim

The Second Circuit has held that claims brought under the ADEA are analyzed under the burden-shifting framework set forth in *McDonnell Douglas*.[28]  *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010).  Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination.  *Id.*  In order to establish a prima facie case of age discrimination, a plaintiff must demonstrate "(1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she

---

[28] Plaintiff's NYSHRL claim is considered in conjunction with the federal claims in this section because the legal standard is the same.  *Saunders v. McDonald Inv. Inc*., 110 F. App'x 150, 152 (2d Cir. 2004) (summary order) (quoting *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001)).

experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Gorzynski*, 596 F.3d at 107.  If the plaintiff establishes a prima facie case, the burden shifts to the defendant "to articulate 'some legitimate, nondiscriminatory reason' for its action." *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 802).  If the defendant sets forth a legitimate reason, the burden shifts back to the plaintiff to show that the proffered reason is a mere pretext and that the employer's decision was the result of discrimination.  *Id.*  The plaintiff must show that "age was the 'but-for' cause of the challenged adverse employment action."  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009).  Plaintiff has failed to establish a prima facie case of age discrimination.

Plaintiff has failed to demonstrate that his termination occurred under circumstances giving rise to an inference of age discrimination.  Plaintiff claims a number of younger people were transferred instead of Plaintiff.  (Pl. Opp'n 55.)  Plaintiff states that Ken Blaize, Annie Narain, Richard Palumbo, and Mike Piazza are examples of younger employees who were transferred.  (*Id.*)  However, Plaintiff fails to provide any additional facts to support this claim, including facts demonstrating that these individuals are similarly situated to Plaintiff.  (*See id.*)  "Under Second Circuit law, where a plaintiff seeks to make out a case of discrimination 'by pointing to the disparate treatment of a purportedly similarly situated employee, the plaintiff must show that [ ]he shared sufficient employment characteristics with that comparator so that they could be considered similarly situated.'"  *Drummond v. IPC Int'l, Inc.*, 400 F. Supp. 2d 521, 532 (E.D.N.Y. 2005) (alteration in original) (quoting *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997)).  Plaintiff's failure to establish, beyond conclusory allegations, that similarly situated younger employees were either transferred or not administratively terminated is fatal to Plaintiff's claims.  *See, e.g.*, *Rosario v. Hilton Hotels Corp.*, 476 F. App'x 900, 902 (2d

Cir. 2012) (summary order) (affirming the district court's grant of summary judgment to the defendant because the plaintiff "did not offer adequate evidence to support his contention" that he was treated differently than younger employees); *MacKinnon v. N.Y.C. Human Res. Admin.*, 441 F. App'x 16, 17–18 (2d Cir. 2011) (summary order) (holding that the plaintiff's failure to provide facts regarding the ages of the other employees and how they are similarly situated warranted granting the defendant summary judgment), *cert. denied*, 132 S. Ct. 2382 (2012); *Davis v. Avaya, Inc.*, 295 F. App'x 380, 382 (2d Cir. 2008) (summary order) (upholding the district court's grant of summary judgment because the plaintiff "fail[ed] to make an adequate showing that similarly situated coworkers received disparate treatment"); *D'Agostino v. LA Fitness Int'l, LLC*, No. 10-CV-1120, 2012 WL 4739084, at *8–9 (E.D.N.Y. Sept. 28, 2012) (granting the defendant summary judgment where the plaintiff failed to demonstrate on the record that she was similarly situated to the younger employees, who were allegedly treated favorably); *see also Thompson v. Solis*, 379 F. App'x 71, 74 (2d Cir. 2010) (summary order) ("Because [the plaintiff] adduced no evidence of discrimination apart from alleged differential treatment as compared to another employee with whom she was not similarly situated, the district court correctly entered summary judgment for the [defendant]."). Defendant's motion for summary judgment as to Plaintiff's age discrimination claim is granted.[29]

---

[29] Plaintiff's claim also fails to meet the more liberal NYCHRL standard. *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278–79 (2d Cir. 2009) ("[C]laims under [NYCHRL] must be reviewed independently from and 'more liberally' than their federal and state counterparts[.]" (citations omitted)). "NYCHRL claims remain subject to the standard that requires age to be only a 'motivating factor' for the adverse employment action, rather than the 'but-for' cause." *Colon v. Trump Int'l Hotel & Tower*, No. 10-CV-4794, 2011 WL 6092299, at *5 (S.D.N.Y. Dec. 7, 2011) (citing *Weiss v. JPMorgan Chase & Co.*, No. 06-CV-4402, 2010 WL 114248, at *3–4 (S.D.N.Y. Jan. 13, 2010)); *see also Mikinberg v. Bemis Co., Inc.*, No. 12-CV-850, 2013 WL 154246, at *5 (S.D.N.Y. Jan. 15, 2013) ("An NYCHRL claim will therefore survive as long as age was a 'motivating factor' for the challenged adverse employment action."). Plaintiff has failed to proffer sufficient facts to illustrate that age was a motivating

### f.   Hostile Work Environment

#### i.   ADA,[30] ADEA and NYSHRL Claims

In order to establish a hostile work environment claim, a plaintiff must produce evidence that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[31]  *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 702 F.3d 685, 693 (2d Cir. 2012) (quoting *Gorzynski*, 596 F.3d at 102).  In addition to demonstrating that he or she perceived the environment to be abusive, the plaintiff must show that the environment was objectively hostile and abusive.  *Rivera*, 702 F.3d at 693–94; *Gorzynski*, 596 F.3d at 102.  "In considering whether a plaintiff has met this burden, courts should 'examin[e] the totality of the circumstances, including:  the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it

---

factor.  *See, e.g.*, *Mikinberg*, 2013 WL 154246, at *6 ("Even granting plaintiff all reasonable inferences from these facts, no reasonable juror could find that age was 'the but-for' cause of plaintiff's termination, or even a motivating factor for it."); *Aiossa v. Bank of Am., N.A.*, No. 10-CV-1275, 2012 WL 4344183, at *2 (E.D.N.Y. Sept. 21, 2012) (holding that the plaintiff's NYCHRL age discrimination could not survive summary judgment because the "[p]laintiff has failed to establish a prima facie case of age discrimination because she hasn't shown that the relevant adverse employment actions occurred under circumstances giving rise to an inference of discrimination").

[30] The Second Circuit has yet to affirmatively establish that hostile work environment claims apply to the ADA.  The Court assumes without deciding that Plaintiff can bring a hostile work environment claim under the ADA.  *See, e.g.*, *Margherita v. FedEx Exp.*, No. 11-CV-4859, 2013 WL 452527, at *2 (2d Cir. Feb. 7, 2013) (summary order) ("Assuming that the ADA provides a basis for a hostile work environment claim, an issue not yet decided by this Court, [the plaintiff] has failed to present sufficient evidence to support this claim.").

[31] This section analyzes ADA, ADEA and NYSHRL claims in conjunction because "[h]ostile work environment and retaliation claims under the NYSHRL are generally governed by the same standards as federal claims under" federal law.  *Summa v. Hofstra Univ.*, 708 F.3d 115, 123–24 (2d Cir. 2013) ("Hostile work environment claims under both [federal law] and the NYSHRL are governed by the same standard." (citing *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006))).

unreasonably interferes with the victim's [job] performance.'"  *Rivera*, 702 F.3d at 693–94

(alteration in original) (quoting *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003)).

Periodic and episodic incidents are not sufficient to establish hostile work environment claims.

*Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000) ("Isolated instances of harassment

ordinarily do not rise to this level."); *Chukwueze v. NYCERS*, No. 10-CV-8133, 2012 WL

3758452, at *7 (S.D.N.Y. Aug. 30, 2012) (holding that the three incidents alleged in the

complaint were "'episodic' instances of 'mere offensive utterances' and thus are neither severe

nor pervasive enough to alter the conditions of his work environment."  (alterations and citations

omitted)); *see also Redd*, 678 F.3d at 175–76 ("Isolated incidents usually will not suffice to

establish a hostile work environment, although we have often noted that even a single episode of

harassment can establish a hostile work environment if the incident is sufficiently 'severe.'").

 Plaintiff alleges that the following incidents created a hostile work environment:  (1) on

June 3, 2002, Plaintiff was told by Dave McKenna, "I'll see you spend the rest of your career in

the hub," (Goldberg Aff. Ex. 18 at 3; Pl. Opp'n 56; Def. Reply 11); (2) on August 1, 2002,

Plaintiff was told by Craig Owens that "[m]aybe UPS isn't for you anymore," (Goldberg Aff. Ex.

18 at 4; Pl. Opp'n 56; Def. Reply 11); (3) on September 15, 2004, Plaintiff's wife was told by

Bruce Thomas that "UPS is no longer right for Paul," (Goldberg Aff. Ex. 18 at 17; Pl. Opp'n 56;

Def. Reply 11); (4) on October 7, 2004, Plaintiff was told that his failure to write and sign a

statement regarding an investigation into another employee's time card would be considered a

resignation on Plaintiff's part, (Goldberg Aff. Ex. 18 at 17–18; Pl. Opp'n 56; Def. Reply 11); (5)

on March 8, 2004, Plaintiff was placed on a PIP and Plaintiff asserts he was accused of lying

during the meeting (Goldberg Aff. Ex. 18 at 27; Pl. Opp'n 56; Def. Reply 11); and (6) on March

12, 2005, in a meeting to discuss Plaintiff's performance, Plaintiff was called a liar, false

criticisms of his work were raised, and Plaintiff was told he would not get a bonus that year,

(Goldberg Aff. Ex. 18 at 30–32; Pl. Opp'n 56; Def. Reply 11).  In addition, Plaintiff also alleges

that he was refused accommodation, which supports his claim for hostile work environment.  (Pl.

Opp'n 25.)  Plaintiff also alleges that these types of comments were said to all employees.

(Goldberg Aff. Ex. 18 at 31 ("I & my peers have been enduring daily incidents of

unprofessional, harassing abuse.  E.g. (longer hours, increased daily report submittal containing

identical/redundant information and daily threats of discharge from the company.)"); Lario Aff.

Ex. 18 at 31 (same).)  Neither Plaintiff's disability nor his age are overtly referenced in any of

these incidents, and Plaintiff has failed to provide any evidence, other than his conclusory

allegations demonstrating that these incidents were related to his disability or his age.  *See, e.g.*,

*Robinson v. Zurich N. Am. Ins. Co.*, No. 10-CV-3926, 2012 WL 4320645, at *24 (E.D.N.Y. Sept.

21, 2012) (granting summary judgment on hostile work environment claim because all alleged

events were "facially-neutral, work-related conduct, and plaintiff ha[d] offered no evidence from

which a rational jury could infer that these facially-neutral actions were discriminatory [—] [i]n

other words, plaintiff has not provided any evidence that would provide a circumstantial basis, or

any other basis, for a rational jury to infer that the race-neutral and age-neutral conduct alleged

was discriminatory"); *Risco v. McHugh*, 868 F. Supp. 2d 75, 116 (S.D.N.Y. 2012) (holding that

the plaintiff had failed to provide evidence demonstrating that the facially neutral incidents were

based on the plaintiff's protected class).

　　　Furthermore, these incidents alone are not sufficiently pervasive or severe to warrant a

finding of a hostile work environment.[32]  *See, e.g.*, *Lawless v. TWC Media Solutions, Inc.*, 487 F.

---

[32] Plaintiff cites to three cases in support of his argument that he has stated sufficient facts
to sustain a hostile work environment claim, but none of these cases support Plaintiff's argument.
In *Kaytor v. Elec. Boat Corp.*, the Second Circuit found that the few explicitly sexual statements

App'x 613, 618 (2d Cir. 2012) (summary order) ("[T]he occasional behavior cited by [Plaintiff]

does not rise to the level of severity or pervasiveness necessary to establish a hostile work

environment claim."); *Kouakou v. Fideliscare N.Y.*, No. 11-CV-6714, 2012 WL 6955673, at *8

(S.D.N.Y. Dec. 17, 2012) (granting the defendant judgment on the pleadings where the plaintiff

alleged four discriminatory acts, including one that lasted for two months because the plaintiff

had "not demonstrated that they were 'continuous and concerted,' rather than minor and

episodic, or that any one of them was 'extraordinarily severe'" (citation omitted)); *Beale v.*

*Mount Vernon Police Dep't*, No. 07-CV-7520, 2012 WL 4473282, at *10 (S.D.N.Y. Sept. 28,

2012) (holding that "while ranging from foolish to deeply insensitive" "the half-dozen comments

at issue in this case over a sixteen-month time period . . . are less severe and no more pervasive

than those found by other courts within the Second Circuit, and by the Second Circuit, not to be

sufficient to create a hostile work environment" (collecting cases)).  Plaintiff has not presented

any evidence from which a jury could infer that his work environment was objectively hostile, let

---

coupled with the threat of physical violence, which was unrelated to gender, was sufficient for
the plaintiff to sustain a hostile work environment claim.  609 F.3d 537, 549 (2d Cir. 2010).  In
*Lamar v. Inst. for Family Health*, the district court found that "the record contain[ed] ample
evidence of alleged sexually based harassment that could allow a jury to conclude that the
monitoring of plaintiff's time, an otherwise sex-neutral incident, was, in fact, sex-based,"
including the prior sexual affair between the defendant and the plaintiff and the defendant's
overtly jealous subsequent acts.  No. 09-CV-1154, 2011 WL 2432925, at *11 (N.D.N.Y. June
16, 2011), *aff'd*, 472 F. App'x 98 (2d Cir. 2012).  In *Gorzynski v. JetBlue Airways Corp*, the
defendant had "made numerous (approximately six) sexual comments and, on multiple
occasions, grabbed [the plaintiff] and other women around the waist, tickled them, and stared as
if he were mentally undressing them," which was sufficient to sustain a hostile work
environment claim.  596 F.3d 93, 102 (2d Cir. 2010).  Plaintiff's case is significantly different
from these cases.  None of the statements Plaintiff relies on displayed any animus.  Nor was
Plaintiff physically threatened.  In addition, none of the statements occur under circumstances
giving rise to an inference of discrimination.

alone permeated with any age or disability discriminatory animus.  Defendant's motion for

summary judgment as to Plaintiff's hostile work environment claims is granted.[33]

### g.  Retaliation

Plaintiff alleges that Defendants violated the ADA, ADEA, NYSHRL and NYCHRL by

retaliating against him.  The Second Circuit analyzes retaliation claims under the ADA, ADEA

and NYSHRL under the same burden shifting framework.[34]  *Summa v. Hofstra Univ.*, 708 F.3d

---

[33] Plaintiff also fails to satisfy the NYCHRL more liberal standard for hostile work environment.  Under the NYCHRL, a plaintiff need not establish that the conduct was severe or pervasive.  *Kerman-Mastour v. Fin. Indus. Regulatory Auth., Inc.*, 814 F. Supp. 2d 355, 365–66 (S.D.N.Y. 2011); *see also Kolenovic v. ABM Indus. Inc*., 361 F. App'x 246, 248 (2d Cir. 2010) (summary order) (holding that NYCHRL hostile work environment claims should not be analyzed under the "severe or pervasive" standard but a more liberal standard (citing *Loeffler*, 582 F.3d at 278)).  On the facts presented, Plaintiff's claim fails to meet NYCHRL's liberal standard because there is absolutely no indication from the record that any of the statements were said because of Plaintiff's disability.  *See, e.g.*, *Margherita v. FedEx Exp*., No. 11-CV-4859, 2013 WL 452527, at *2 (2d Cir. Feb. 7, 2013) (summary order) (finding that there was no evidence that plaintiff suffered a hostile work environment because of his disability "even under the broad and liberal construction of the NYCHRL"); *Lennert-Gonzalez v. Delta Airlines, Inc.*, No. 11-CV-1459, 2013 WL 754710, at *8 (S.D.N.Y. Feb. 28, 2013) (dismissing on summary judgment the plaintiff's NYCHRL hostile work environment claim because the plaintiff had failed to show that any incidents were based on anti-protected class animus rather than "[p]ersonal animus"); *Rozenfeld v. Dep't of Design & Const. of N.Y.C.*, No. 10-CV-4002, 2012 WL 2872157, at *15 (E.D.N.Y. July 12, 2012) (holding that the few instances alleged by the plaintiff did not demonstrate animus and were too minor to meet NYCHRL's hostile work environment standard); *Sotomayor*, 862 F. Supp. 2d at 261 (dismissing plaintiff's NYCHRL hostile work environment claim because "plaintiff cannot show that a hostile work environment was created 'because of her race, age, or national origin'").

[34] NYCHRL uses a similar burden shifting frame work to federal law and the NYSHRL.  However, "[t]he NYCHRL . . . drops the requirement that retaliation claimants demonstrate that they suffered a materially adverse action."  *Kerman-Mastour v. Fin. Indus. Regulatory Auth., Inc.*, 814 F. Supp. 2d 355, 366 (S.D.N.Y. 2011); *see also Noel v. BNY-Mellon Corp.*, No. 11-CV-4478, 2013 WL 978725, at *2 (2d Cir. Mar. 14, 2013) ("[T]he NYCHRL has been amended to abolish the parallelism between the [NYCHRL] and federal and state anti-discrimination law, and under the NYCHRL, a plaintiff need not have suffered a materially adverse change in the terms and conditions of employment to establish a prima facie case of retaliation." (quotation marks omitted) (quoting *Loeffler*, 582 F.3d at 278)).  Instead, plaintiffs need merely show that the complained of conduct was 'reasonably likely to deter a person from engaging in protected activity.'"  *Kerman-Mastour*, 814 F. Supp. 2d at 366 (citations omitted).  In all other aspects the standard is the same.  *Id.*

115, 125 (2d Cir. 2013) ("The burden-shifting framework laid out in *McDonnell Douglas* . . .

governs retaliation claims under both Title VII and the NYSHRL."); *Gorzynski*, 596 F.3d at 110

("Retaliation claims under Title VII and the ADEA are also analyzed under the *McDonnell

Douglas* burden-shifting test[.]"); *Smith v. N.Y.C. Dep't of Educ.*, 808 F. Supp. 2d 569, 581

(S.D.N.Y. 2011) ("Retaliation claims under the ADA and ADEA are subject to the same burden-

shifting analysis as claims arising under Title VII.").  Under the test, "[f]irst, the plaintiff must

establish a *prima facie* case of retaliation.  If the plaintiff succeeds, then a presumption of

retaliation arises and the employer must articulate a legitimate, non-retaliatory reason for the

action that the plaintiff alleges was retaliatory.  If the employer succeeds at the second stage,

then the presumption of retaliation dissipates and the plaintiff must show that retaliation was a

substantial reason for the complained-of action."  *Fincher v. Depository Trust and Clearing

Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (citations omitted); *see also Summa*, 708 F.3d at 125

(discussing the burden shifting analysis in retaliation context); *Tepperwien v. Entergy Nuclear

Operations, Inc.*, 663 F.3d 556, 568 n.6 (2d Cir. 2011) (same); *Jute v. Hamilton Sundstrand

Corp.*, 420 F.3d 166, 173 (2d Cir. 2005) (same).

### i.  Prima Facie Case

To establish a prima facie case of retaliation, a plaintiff must demonstrate that (1) the

employee was engaged in a protected activity, (2) the employer was aware of that activity, (3)

the employee suffered an adverse employment action, and (4) there was a causal connection

between the protected activity and the adverse employment action.  *Rivera*, 702 F.3d at 698;

*Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012); *Gorzynski*, 596

F.3d at 110.

### (a) Protected Activity

Plaintiff claims that he made at least seven different complaints, which should all be considered protected activity. (Pl. Opp'n 57.) Defendant argues that only one of the complaints could arguably be considered protected activity — a May 15, 2005 meeting with Bruce Thomas (Employee Relations Manager) where Plaintiff complained about the reasonable accommodation process. (Def. Summ. J. 44–45.) Plaintiff's requests for reasonable accommodation in 2004 and 2006, in addition to the May 15, 2005 meeting with Bruce Thomas, were protected activities.[35]

A request for reasonable accommodation is an ADA-protected activity. *Weixel v. Bd. of Educ. of N.Y.C.,* 287 F.3d 138, 149 (2d Cir. 2002); *Rodriguez v. Atria Sr. Living Group, Inc.*, 887 F. Supp. 2d 503, 512 (S.D.N.Y. 2012). Plaintiff receives protection even if he was not entitled to the reasonable accommodation, as long as he made his request in good faith. *Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 234 (2d Cir. 2000) (holding that under the ADA, "a plaintiff need not establish that the conduct he opposed was actually a violation of the statute so long as he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated that law." (citation and alteration omitted)); *Rodriguez*, 887 F. Supp. 2d at 512 (noting that good faith mistaken request for reasonable accommodation is protected activity); *Conley v. United Parcel Serv.*, 88 F. Supp. 2d 16, 20 (E.D.N.Y. 2000) (same). As previously discussed in the disability discrimination section, Plaintiff made several requests for accommodation in 2004 and 2006. *See supra* Part II(c). Drawing all inferences in favor of Plaintiff, all of Plaintiff's requests for reasonable accommodation along with his May 15, 2005 meeting with Thomas were protected activity.

---

[35] The Court finds, however, that Plaintiff has failed to establish that he engaged in any protected activity related to age and his ADEA claim for retaliation is therefore dismissed.

### (b) Knowledge

It is not necessary that Plaintiff prove that the specific actors knew of the protected activity as long as Plaintiff can demonstrate general corporate knowledge.  *See Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000) ("A jury, however, can find retaliation even if the agent denies direct knowledge of a plaintiff's protected activities, for example, so long as the jury finds that the circumstances evidence knowledge of the protected activities or the jury concludes that an agent is acting explicitly or implicit[ly] upon the orders of a superior who has the requisite knowledge."); *Trivedi v. N.Y.S. Unified Court Sys. Office of Court Admin.*, 818 F. Supp. 2d 712, 736 (S.D.N.Y. 2011) ("A plaintiff need not prove that the specific actors within an organization were aware that the plaintiff made allegations of retaliation to make out a *prima facie* retaliation claim; rather, 'general corporate knowledge that the plaintiff has engaged in a protected activity' is sufficient."  (citations omitted)).  The reasonable accommodation requests were part of Defendant's formal accommodation process.  Therefore, Plaintiff has established knowledge.  As to the meeting with Thomas, Defendant does not, and cannot, challenge knowledge.

### (c) Causation

Plaintiff must establish causation between any of his protected activity and his termination.[36]  Plaintiff relies on temporal proximity to establish causation.  (*See* Pl. Opp'n 57–59.)  "[A] plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action."  *Gorzynski*, 596 F.3d at 110 (citing *Gorman-Bakos v. Cornell*

---

[36] Defendant concedes that Plaintiff's termination is an adverse action.  (Def. Summ. J. 45.)

*Coop. Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001)); *see also Feingold v. New York*, 366 F.3d 138, 156 (2d Cir. 2004) ("[T]he requirement that [Plaintiff] show a causal connection between his complaints and his termination is satisfied by the temporal proximity between the two."); *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002) ("We have held that a close temporal relationship between a plaintiff's participation in protected activity and an employer's adverse actions can be sufficient to establish causation.").  It is undisputed that Plaintiff continued to make accommodation requests up until October 5, 2006, and that he received a letter from Defendant on October 25, 2006 stating that he could not be accommodated and his administrative termination was final.[37]  (Def. 56.1¶¶ 95–120; Pl. 56.1 ¶ 95–120, 285; Lario Ex. 45.)  Given the temporal proximity, a reasonable jury could find that either Plaintiff's requests for reasonable accommodation or his complaint to Thomas were the cause of his termination.  *See, e.g.*, *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 850 (9th Cir. 2004) (finding that the plaintiff's "numerous complaints to the union, . . . human resources department, and the EEOC about [Defendant's] failure to accommodate his disability throughout 1997-1999" were sufficient to establish causation because "[w]hen adverse employment decisions closely follow complaints of discrimination, retaliatory intent may be inferred"); *Lupe v. Shinseki*, No. 10-CV-198, 2012 WL 3685954, at *20 (N.D.N.Y. Aug. 24, 2012) ("The gap between plaintiff's protected activity and her termination is close enough in time to support an inference that defendant terminated plaintiff in retaliation for asking for . . . reasonable accommodation.").

---

[37] As discussed in the statute of limitations and failure to accommodate sections above, a reasonable jury could find that Plaintiff was not terminated until October 2006.  *See supra* Part II(b)–(c).

43

### ii.  Legitimate Reason

Since Plaintiff has established a prima facie case of retaliation, a presumption of retaliation arises and Defendant must articulate a legitimate reason for Plaintiff's termination. *Fincher*, 604 F.3d at 720.  Defendant has done so.  Defendant states that Plaintiff was not accommodated because — based on its understanding of Plaintiff's requests — he did not suffer a disability that altered a life function.  (Def. Summ. J. 45–46.)  Defendant also asserts that pursuant to Defendant's Flexible Benefits policy, Plaintiff was administratively terminated because he was absent from work for a year.  (Def. Summ. J. 45.)  Defendant additionally claims that Plaintiff was not provided with another position to accommodate him because there were only a few open management positions and Defendant and Plaintiff determined that these positions would not accommodate Plaintiff.  (Def. Reply 34.)  The Court must determine, therefore, whether Plaintiff has established that Defendant's proffered legitimate reasons were pretext.

### iii.  Pretext

"The temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation . . . but without more, such temporal proximity is insufficient to satisfy [the plaintiff's] burden to bring forward some evidence of pretext."  *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010).  As discussed above, the parties dispute when Plaintiff was terminated.  *See supra* Part II(c).  A reasonable jury could determine that Plaintiff was not terminated until after his second "checklist meeting" in October 2006.  Plaintiff has presented evidence that he was denied a reasonable accommodation, and thus prevented from returning to work, even though a reasonable accommodation existed. *See id.*  Plaintiff also points to the hostility in which his reasonable accommodation requests

were made as evidence of pretext.  (Oral Arg. Tr. 71:6–13.)  According to Plaintiff, when he

made requests for reasonable accommodation, rather than accommodate Plaintiff, he and his wife

were told that UPS was no longer right for him.  (*See, e.g.*, Goldberg Aff. Ex. 18 at 17; Pl. Opp'n

56; Def. Reply 11.)  While these statements are not sufficient to establish a hostile work

environment, these statements coupled, with temporal proximity, are sufficient for a reasonable

jury to find pretext.[38]  *See, e.g.*, *Lupe*, 2012 WL 3685954, at *19 (holding that plaintiff had

sufficiently established facts to raise a factual question whether her termination was retaliation

when she was terminated a few days after making a reasonable request for accommodation and

the defendant arguably could have made the accommodation); *Pugliese v. Verizon N.Y., Inc.*, No.

05-CV-4005, 2008 WL 2882092, at *5–6 (S.D.N.Y. July 9, 2008) (holding that there was an

issue of fact regarding whether the defendant failed to reasonably accommodate the plaintiff and

it was also an issue of fact whether the defendant continued not to accommodate her because she

complained of the defendant's inactivity on the initial request for accommodation); *Teachout v.

N.Y.C. Dep't of Educ.*, No. 04-CV-945, 2006 WL 452022, at *15 (S.D.N.Y. Feb. 22, 2006)

(finding that the plaintiff's retaliation claim survived because "[a] reasonable finder of fact could

conclude that upon his arrival at [the job], [the plaintiff] was immediately considered a 'problem'

due to his requests for accommodations, and continued to be viewed that way as he complained

about his ongoing treatment at" the job); *Scotti v. County of Nassau*, No. 02-CV-3685, 2005 WL

3670913, at *5–6 (E.D.N.Y. Sept. 13, 2005) (denying the defendants' request for summary

judgment on the plaintiff's retaliation claim where there was a question of fact as to whether the

---

[38] Since Plaintiff meets the ADA standard, he also meets NYSHRL standard, which is the same.  *Smith v. Town of Hempstead Dep't of Sanitation Sanitary Dist. No. 2*, 798 F. Supp. 2d 443, 457 (E.D.N.Y. 2011).  Plaintiff also meets the NYCHRL's more liberal standard for retaliatory conduct, which drops the requirement that retaliation claimants demonstrate that they suffered a materially adverse action.  *Noel*, 2013 WL 978725, at *2; *Kerman-Mastour*, 814 F. Supp. 2d at 366.

defendants "honestly believed" that the plaintiff was unable to perform his job with or without a reasonable accommodation).

**III.    Conclusion**

For the foregoing reasons, the Court grants in part and denies in part Defendant's motion for summary judgment.  The Court grants Defendant's summary judgment motion as to Plaintiff's age discrimination claims under the ADEA, NYSHRL and NYCHRL, hostile work environment claims under the ADA, ADEA, NYSHRL and NYCHRL and retaliation claim under the ADEA.  The Court denies Defendant's motion for summary judgment as to Plaintiff's failure to accommodate and retaliation claims under the ADA, NYSHRL and NYCHRL.

SO ORDERED:


_____/s/MKB_____
MARGO K. BRODIE
United States District Judge

Dated:  March 26, 2013
        Brooklyn, New York

46